Good afternoon. Please be seated. We're here for the embankment argument in Patel v. City of Los Angeles. Council ready? Okay. We'll hear from the appellants. Good afternoon, Your Honors. Frank Weiser on behalf of the appellants Naranjibhai Patel and Ramilaben Patel and the Los Angeles Locking Association and its members, which was part of the consolidated cases by Judge Fischer. There were actually three cases and some 40 or 42 plaintiffs who were part of that. But Naranjibhai Patel and Ramilaben Patel were the lead plaintiffs as consolidated by Judge Fischer. I'd like to start out by addressing Judge Kosinski's order. I believe he ordered last week that we address the relevance of the Cibron v. New York case at 392 U.S. 40. It's a 1968 U.S. Supreme Court case. And I'm going to use, if the court will allow me, generically, this is Patel's facial challenge to the Fourth Amendment challenge to the LAMC ordinance, the Motel Register Inspection Ordinance. I take it that what the court is saying is that there may be some objection to a general facial challenge under the Fourth Amendment, irrespective of the Salerno issues. And I take it by the fact that just looking at what Cibron was in general, it was a stop-and-frisk statute that was allowed to be done under reasonable suspicion by police officers in New York. The particular case was there was a stop in questioning of an individual for whether he was drug dealing. Well, Mr. Weiser, the concern is that you have brought a facial challenge and you dropped your as-applied challenge, and the district court only tried a facial challenge. So you are asking us to pass on the constitutionality of the statute itself without any consideration of facts. And if a statute is facially valid, if the court can conceive of a set of facts that would render it so, how can we proceed any further? As I read the language in Cibron, the court told us that the case is over at this point. That's the end of it. And I was going to address that, Judge Tallman. I just wanted to give a bit of a factual background. Of course, the court knows about the Cibron case. But Cibron was saying that the constitutional validity of a warrantless search is primarily a question of the facts of the individual case or looking at the facts of the individual case. And I think that's true in general. I think obviously the touchstone of any Fourth Amendment analysis is reasonableness, and generally reasonableness is judged by the facts of the individual search. But what we have here is a programmatic search and, in particular, an administrative warrantless search scheme for commercial premises in which the Supreme Court and this circuit in the Tucson Women's Clinic v. Eden case back in 1994 did entertain or looks at the face specifically, the analysis looks at the face of the statute and essentially does turn or can turn on the issue of a facial challenge. Another difference, or maybe a related difference, is that Cibron was a statute that did not authorize – it itself had a substantive standard, reasonable suspicion. But here the authorization is with absolutely no cause of any kind. And I was going to – I appreciate that, Justice O'Connor. I think that's absolutely true. And, in fact, of all the categories of warrantless, suspicious searches – and I think they were very well delineated by Judge O'Scanlan in the Kincaid case – but of all those categories, the only one in which the Supreme Court has said you either have to have a warrant or you have to have a substituted warrant on the face of the statute is the Berger type. But, Mr. Weiser, aren't you reading into the ordinance language that does not appear there? You want to add the words that the officer can ask for an inspection of the records without a warrant. And the ordinance doesn't say with or without. We don't know. There was a stipulated fact, and I think that the opinion that preceded this en banc hearing – and I think, you know, I'm certainly not saying anything on that – but there was a stipulated fact that said as follows – if the Court will just indulge me for a second. Well, actually, it was in Judge Fisher's findings of fact, but it was a little different than the published opinion. The stipulated fact said – and that was what informed the operation or the interpretation of the statute, the language in the statute – plaintiffs have been subject to and continue to be subject to searches and seizures of motel registration records by the Los Angeles Police Department without consent or warrant pursuant to REMC section 41.49. And then it goes on, which permits law enforcement to demand inspection of motel registers at any time without consent or warrant. Well, suppose they arrive on exigent circumstances, that a robbery or a kidnapping had just been committed, and somebody on the street said the kidnapper is named David Smith and he's living at your client's motel. Wouldn't the officers under that circumstance be able to make a demand to inspect the records of the motel? No, but that's different than burger searches. What burger searches are concerned about is which you have regular administrative searches pursuant to a statute or an ordinance, and that statute or ordinance authorizes those regular inspections, suspicion-first inspections. It would seem that, in my hypothetical, that the search would be – the request to look at the records would be legal. But it's not a burger search. What we're looking at in a burger search is the statute itself to see and balance between the public interest in the statute for the need for the regular inspections. You're saying Judge Tallman is not pursuant to the statute. But the statute simply says you've got to maintain the records so that they can be inspected by the police. It doesn't tell us the circumstances under which a request for inspection might be made. What the statute says is that this police can regularly inspect without suspicion for any reason, without cause, pursuant to the statute. It's regular configurations. It's not exception. Are you challenging the requirement that the records be maintained or separately from the – there's the inspection part of it. They can come in. They can look at the register any time. Correct. Whatever. But there's also the requirement that they maintain these records. Is there a challenge to that aspect of this? No, it is not. No, it is not. You're not challenging the requirement that your clients – I mean, let's say the – I mean, the authorization for the reading was tracked down. Your clients would continue to maintain the records. That's correct. And these are records that are – If you said probable cause or a warrant or a subpoena or something like that, the records would be there to be inspected. That's correct. Mr. Weiss, I have a different concept I'd like to ask you about. I was very surprised to see that the plaintiffs were two individuals operating a motel. I'd never seen that before. I've always thought LLCs, corporations, something that would protect them from liability. I'm concerned about this, of course, for standing purposes. So my question is, do these two individuals own the hotel and the ground they're on in fee? Yes, they do. They do. So there's no real entity that holds title. No, there's no difference between the hotels and who holds title. Okay. And that goes for the Los Angeles – these are smart businessmen, but they're not sophisticated necessarily in the intricacies of the liability law. You can understand why. Yes, I do, whether that would allow them to assert the Fourth Amendment challenge or it would have to be the LLC. And I understand that, and I appreciate it. That was the reason I was concerned. Okay. Thank you. Counsel, let me ask you this. I'm on the far – you're far right. Yes, Your Honor. So since you're not challenging the collection of the information, just the officer's ability to inspect it, can I ask this? Put aside this ordinance. If the city passed an ordinance that just said you had to, via, let's say, administrative subpoena, produce the records or the information in the records that the city wants, would you say that that would pose a Fourth Amendment problem as well? I think where that would, Your Honor, it would be – well, first of all, the subpoena process, at least in California, allows some kind of due process in court. First, the legislature passes a subpoena. I believe it's Government Code 37100, and that can be appealed in court. And I actually had a case up in the city of Santa Cruz, which was a published opinion by the Sixth District Court of Appeal that was cited and used by the California Supreme Court – I forget the name – in which they said you can appeal a judge's order affirming the legislative subpoena. Let me just be clear where I'm coming from. That, to me, is the main defect with this ordinance, is that there's no pre-compliance judicial review. Right. But what I guess I'm trying to get at is there's something more than that that you think is problematic? That just the mere production of this information itself? I think there are two prongs to it. I think what Your Honor is saying is correct in the sense that no process – there's unlimited discretion based on the face of the ordinance and the stipulated fact of what the ordinance means. And the police are given boundless discretion to inspect these records. And Marshall v. Barlow and Berger clearly say that if this is an administrative search program, even if it's less than probable cause, as Judge Kuczynski said, there's got to be some limitation on the face of the ordinance of discretion, whether that limitation is a subpoena. I don't believe we've gotten to that point, but some dis- You're going to wait to bring the as-applied challenge when that happens, right? I don't know, Judge Kuczynski, whether I'll be hired to do so. Let's put it this way. You could or would reserve the ability to do that. Correct, Your Honor. Depending on the circumstances. I understand that. But Tucson Women's Clinic v. Eden, Berger clearly state, and Marshall v. Barlow, there's got to be some limitation on the face of the ordinance. I think the concern was, and if the Court will just indulge me for a minute, if one looks at the historical analysis of how these administrative search programs originated under Marshall and then Berger, there's an interesting debate, and I just came across it preparing for the en banc hearing, between Justice Stevens and Justice White, who wrote the Marshall opinion. And what Justice White said in his opinion is, we invalidated an OSHA inspection program that authorized warrantless inspections on the face of the statute. And Justice White said, no, you have to have administrative warrants, and that is to inform the owner of, even though it's less than probable cause, it has to inform the owner who has the authority under the ordinance to inspect, the scope of inspection, and the time of inspection. But I just want to point out one point, is that Justice Stevens, interestingly, and I think very cogently, dissented and said, look, reasonableness is the touchstone of the Fourth Amendment, and you're saying you've got to have a warrant in every case, but you can have searches without warrants in which it's still reasonable, and that's because the reasonable search and seizure clause doesn't necessarily, absolutely necessarily tie to the warrant clause. Well, I have a question about that in terms of, are you saying that if you don't have a warrant, you have to fall within one of the exceptions, and say like the special needs or the administrative? And the special needs exception to a warrant requirement allows the government to conduct an administrative search where getting a warrant is impracticable and the government has a valid interest unrelated to law enforcement. Is Section 4149 about law enforcement, or is it about improving public welfare? Well, it was our contention that originally this was an administrative warrant regulatory scheme, but as it turned out in the pretrial conference order, the city, I believe, admitted that it was for crime control also, and Judge Fischer found as a conclusion of law that it could be reasonably interpreted for crime control. So you keep saying that the touchstone or whatever is the general reasonableness test, right? So you're not contending, if I understand you correctly, that there always has to be a warrant unless one of the two exceptions applies. You still look to general reasonableness? No. What I'm saying is, and I apologize, I think I'm misunderstanding. I may have misunderstood. But what I'm saying is that if it's an administrative search program under Berger, under Marshall, then it has to have a warrant, or the exception is something on the face of the ordinance that limits discretion. That's a facial challenge under the administrative search program. If it's not found by the court to be an administrative search program, in the sense that it's really for law enforcement purposes, then the ordinance just per se fails because the police are using it to gather information. So you're saying if it's not one of the exceptions, then we don't look to general reasonableness? No. If it is – if the police are allowed to use this, if the program is for purposes of gathering information for criminal investigation, primarily for that, then it's per se unreasonable. And we don't look. What? That, I think, was what Judge Pagerson was trying to say, or said in his dissent. Perhaps I'm asking the wrong person. But what would be the administrative purpose of this kind of inspection that wasn't for purposes of crime detection? Well, I think Mr. Leung said in his pretrial conference order that there were health and safety reasons that went along with the so-called illicit activity that – Which is crime enforcement. Right. For want of a better plightness, prostitution and drug activity. Right. But that's crime enforcement. Right. The safety is safety from crimes. Right. So is Judge – are you asking Judge Rezaan what is – Well, I'm just wondering what – you said you originally thought this was an administrative warrant situation, but then you later learned it was really about crime enforcement. But I was just a little mystified by what the administrative purpose would be that isn't crime enforcement. Could it be over-occupancy of the rooms? If – I'm just wondering. I'm asking a question. I don't know. Could it be like the room is only safe for, you know, a family of five? That could be a possibility. Past 17 or, you know, whatever. I suppose what Mr. – You wouldn't need a driver's license for that. You wouldn't need the license plate for that. You wouldn't need a lot of the information for that. Who is staying in the room? How many people are staying in the room? That would go to the information on the cards, the registration cards, that they would want to know how many people are staying in the room. Counsel, what significance should we attach to the fact that these are records that are required to be kept? In other words, these are not necessarily the records that the hotel itself might want to keep on its own. Is that significant in any way? Well, first of all, I take issue, Your Honor, that these are not – these are records they wouldn't want to keep. These are regular records that any motel operator would anyway keep. Yeah, but the ordinance specifically orders every operator of a hotel shall keep a record in which the following information is included. At the three-judge panel level, I filed a FRAP 28-J letter, and I indicated there was a circuit split going back to OSHA inspections where they had to require to keep OSHA records, which I believe it's the Sixth, Eleventh, and Fourth Circuits, where they say that the fact that it's required to be kept, I believe the Sixth and Eleventh Circuit says there's no such thing as a required record doctrine under the Fourth Amendment. It's been applied in Fifth Amendment challenges, but not in Fourth Amendment issues, and the Fourth Circuit does say that. And then I also cited a Dela Cruz v. Crackenbush case in the Second District Court of Appeal by Justice Johnson, and I think that case, although it's certainly not binding on this Court, the logic is compelling. In that case, the insurance inspector – the insurance agent was required under California insurance law to keep records for inspection by the insurance commissioner without – on demand, without a warrant. He refused to do so. He lost his license. He took it up on a writ to Superior Court Judge Yaffe. It was reinstated. It was found that it violated his Fourth Amendment rights. And Justice Johnson affirmed, and he said, and he went through a very, very extensive analysis, that there's absolutely no required records doctrine that's ever been espoused by the U.S. Supreme Court. Now, as I said, there may be a circuit split, and this circuit has never decided that, but as I understood Judge Clifton's pejorative opinion in this case, he did not believe there was a required record. Majority opinion cited Cormier. Are you asking us to overturn Cormier? No, I'm not. I think Cormier stands for the proposition that the one who has possession or ownership of the property or records is the one who has standing to assert the Fourth Amendment challenge. But the tenant or guest at the motel who doesn't have possession or ownership of the records cannot. He does not have a reasonable expectation of privacy. Or now under U.S. v. Jones, he certainly can't claim that. So if a hotel owner were to provide the records voluntarily, if the hotel owner were to provide the records voluntarily, I mean, let's say for whatever reason said, oh, yes, come in and inspect the records at any time, the guest couldn't object. I believe that's the law in this circuit as I understand it. And you're not asking us to overturn it? No, absolutely not. Counsel, can I just come back to the question I posed to you again on the far right? Sure. So if this ordinance were set up such that it required production of the information via administrative subpoena, are you arguing here that that would on its face be violative of the Fourth Amendment because a warrant is required? Well, I think if it's a crime control ordinance, and it is an ordinance that the police are using primarily for investigating crimes. Let's just say it's exactly like the ordinance we have here, just that the mechanism for production of information is different. And it's serving the exact same purposes of the existing ordinance, but the information is produced via administrative subpoena. I'm just asking you, are you arguing that, I don't know, given the nature of the information, given the nature of your client's business, that a warrant would be required? Or are you saying that an administrative subpoena would be justified? No. I think Marshall Barlow, the Barlow and Berger, even if it's an administrative search scheme and not a crime control, requires an administrative warrant. It's got to be a warrant. It's not a subpoena. Why? Because the warrant informs the due process that the Supreme Court said. Hang on. Let's say that the hypothetical ordinance I'm imagining does provide for pre-compliance judicial review. So you get out of that whole issue that you raised earlier about unlimited discretion of the officers. There is a means by which the recipient of the subpoena can come in and challenge that in court before having to produce the record. So let's say that that's built into it. I'm just trying to get a position, a sense of your position. Are you still saying that that would be violative of the Fourth Amendment because it doesn't require an actual warrant issued by a magistrate? I believe the Fourth Amendment protections under camera searches, under administrative searches, is that it requires a warrant. The warrant clause. Okay. Why is this information that your clients are not wanting to produce here, why is it any different from the kind of information that's produced, that's been allowed to be obtained by the government via administrative subpoena in all sorts of other different contexts? I don't understand the difference. I think, once again, maybe I'm being hard-nosed about it, but the cases themselves say that it is a warrant. It's the warrant clause that is operative here. That's the emphasis. And, therefore, I think we're in Burger. Where in Burger do you find that you have to have an administrative subpoena? That you have to have a subpoena. Burger states clearly the third prong. It has to function. There has to be enough notice in the pervasive nature of the regulation, but where does it provide that there has to be an actual warrant issue? What Burger says is that if there's a special need such that it's pervasively regulated, substantial governmental interest, the face of the statute is, in effect, the warrant. But it's not specific. It's not specific to the individual. It doesn't go through any narrowing down. It's just the narrowing comes because the target happens to have to comply with the regulations, and they know that. Correct, but it's the equivalent of a warrant. That's what Burger says. Mr. Wiser, as you well know, Supreme Court recently decided the Jones case. Correct. And that went off on the property concept and papers and the like. Correct. The minority, in the case of Justice Alito, went off on the privacy, expectation of privacy a la Katz. Here we've got both issues. You've got the Jones approach. You've got the Katz approach. And, of course, all the other things that my colleagues have been talking about under Burger and so on all follow Katz. In order to make out a facial challenge, do you have to meet both prongs or just one? In other words, if you show that you meet the Jones requirements, do you even have to get into the reasonable expectation of privacy in order to prove your point? Or do you have to show both? No, I think if you – and I had pressed that all along, that there was an alternative property prong. Either one is sufficient from your perspective to meet the facial challenge. That's correct. Although I would say, although once again the court, through judicial prudence, may not want to decide it, but I respectfully took issue that there was not evidence of a reasonable expectation of privacy. What evidence? What is the evidence? When I thought about it, the camera case. In this case, what is the evidence of a reasonable expectation of privacy, of any expectation of privacy on the part of the plaintiffs? First of all, the ordinance itself on the statute, on the face of the statute, says that these have to be kept for tax purposes. And that has been traditionally protected under the objective of reasonable tax statute. Is there any evidence whatsoever in the record that the Patels had an expectation of privacy in these documents? Once again. The answer, no. If I might, Judge Kliff, can you? Well, that's why I asked the question. But so far I haven't heard the answer. What is the evidence in the record of an expectation of privacy on the part of the plaintiffs? I was going to say that adding to what I had just said. Well, what you said was a reference to the ordinance. That's not a reference to the Patels' expectation of privacy. And I was going to say that in reflecting on what Your Honor said in your opinion, it seemed to me that perhaps the issue had already been decided in previous Supreme Court decisions, and that is because under camera searches, the Supreme Court has said that the owner has an expectation of privacy to his commercial, to be free of inspections of his commercial premises without a warrant. Well, what does privacy mean? Privacy calls up notions of personal intimacy, but in the context of the Fourth Amendment, is that what it means? Or does it mean essentially something that is protected from Fourth Amendment searches? It becomes a circular thing. Right. All I'm saying is, is that I agree with the analysis that I don't have to have the privacy prong proven for purposes of the Fourth Amendment protection. But what I was saying was that doesn't mean that they don't have a privacy right. And that privacy right originates out of camera. What are the elements of a reasonable expectation of privacy claim? Don't you have to establish that everybody in your, since it's facial, that every business person takes steps to protect the privacy? Isn't that a relevant question? What if they leave all the information right on the desk? The two-prong test, as I understand it, Cass, is the particular individual's subjective expectation of privacy, which I take it is what Judge Clifton is objecting to. There's no evidence of that. And then whether society will objectively protect it. What I'm saying is, is that if camera is taken on its face, that they have a – it's already been decided that they have an expectation of privacy under the Fourth Amendment to the commercial premises. And the ordinance says on its face it's got to be kept at the motel, then it would seem to me that's an adjunct or that falls within the scope of commercial premises. You have three minutes left. Do you want to save it for rebuttal? Yes, Your Honor. Okay. We'll hear from the other side. Good afternoon, Your Honors. The court there indicated that the constitutional validity of a warrantless search is preeminently the sort of question which can only be decided in the concrete factual context of the individual case. The court declined to withdraw – the court declined to draw into what it viewed as the abstract and unproductive exercise of laying the extraordinary elastic category. Counsel, let me ask you. Just the statute or the ordinance in Ciberon, would you say that there were circumstances in which that statute could be constitutionally applied? It seems to me that's what's perhaps different about this case. Well, I think – Hang on. The claim here is that there is just simply no circumstance, period, in which this ordinance could be constitutionally applied. Whereas in Ciberon, the court said, look, we can't make a facial determination because there may well be some circumstances in which it could be. Well, in Ciberon and other cases, it doesn't look so much towards the ordinance itself in terms of an application of the Fourth Amendment. When the search occurs, there's still the context of evaluating the search with respect to the Fourth Amendment, as opposed to evaluating whether the search was constitutional under the ordinance or the state statute. And if we take a look at footnote 20, that talks about the elasticity of this into that kind of discussion. So we believe that it parallels this case here, because there could be situations if a search actually occurred and if there were concrete factual studies. But the circumstances which would be valid would be ones that were permitted by a different constitutional – a constitutional rule, and they would be permitted anyway. The statute is authorizing some set of searches that are not – as to which there is no constitutional exception, and that's – as to that is what is being challenged. In a facial challenge, plaintiffs bear the burden of establishing that there are no set of circumstances that would render this ordinance valid. That's right. And what they're challenging is the authorization to do it warrantless and without suspicion and without otherwise meeting an administrative warrant requirement. That's what they're challenging. So the fact that you might be able to do a search under different – that is authorized in some other way doesn't validate the statute. The ordinance doesn't operate in all respects that it can't operate in any way other than in a nonconstitutional manner. It can operate in a constitutional manner. How? Well, if an officer were standing, waiting in line to be checked in at a motel, he hears the conversation ahead. Right. Then he's not operating under the statute. There's no reason to rely on the statute at that point. Well, no, no, no. He would be relying on the statute because he would be there to say, hey, where is the motel registration because I just overheard the conversation there. I didn't hear anything about requesting names. But that's a noncompliance with the statute. That's a specific articulable incident. But that's not what they're saying. They're saying the whole requirement that they maintain all this information and regardless of anything else, the police can come in and look at the registers without having to stand in line and overhear a circumstance that might create reasonable suspicion. They're not challenging the requirement that the register be kept. The fact that an officer may come in and check compliance or noncompliance, there are circumstances which render this ordinance constitutional. Which ordinance? The ordinance insofar as it requires the keeping of the records or the ordinance insofar as it permits inspection without regard to whether they have any suspicion? Well, I don't know that the ordinance says quite what Your Honor has articulated there. It's pretty elastic in that it doesn't confine it just to that parameter and that an officer can come in there and inspect the motel registration records without any kind of suspicion. That's why we need a concrete set of facts in which CBRN versus State of New York is applicable here. Was there not a stipulated fact that essentially says that you could do it, that this permits inspection without a warrant and without suspicion? If I may correct, Your Honor, it's just without a warrant, not without anything else. It's just without consent or warrant. It was the stipulated fact. Wasn't Marshall a facial challenge? No, Your Honor. I don't believe that. I don't recall that off the top of my head. Well, let's assume it is. Doesn't that pretty much kill your argument? Marshall's father was CBRN, right? Tucson Women's Clinic certainly was, right? Well, that's an inspection of private medical records, which I think is different from where we're at. So if the touchstone of a Fourth Amendment question is facial challenge, you know, if your argument is, well, there must be some way of statute could operate constitutionally, and you can't have a facial challenge, then Tucson Women's Clinic should have come out differently, right? Well, I mean, if the touchstone of a Fourth Amendment analysis is reasonableness and we determine the facts based on – Where do you get that from? I'm sorry? Where do you get that it's reasonableness, at least under Jones? Do you agree that this is a search? There's no question this is a search under Jones or under Arizona v. Hicks or New York v. Class. This is a search, isn't it? It is a search, Your Honor, but if we – Under Jones, where does the reasonableness come into it? If we take a look at the majority decision in the three-panel judge –  Perhaps in Maryland v. King? Or Maryland v. King, yes. Well, that's the answer. Well, we're not looking for DNA here. This is a question of whether it's a search, and you've got the police. I think they have some reason to put the GPS on a car, but the Supreme Court's treated this as a property.  unless there is some exception that's found. And where's the exception under Jones? I'm not talking about the Katz line of cases, but under Jones, where's the exception? Well, I'm not quite sure that there's an exception there, but if we take a look at Jones and the trespass line of thinking, we have to have some type of meaningful interference with the possessory interest, and we don't have that here. What set of circumstances would there be where you wouldn't have that here? How could they possibly come in and look at the records and not have a physical interference with private property? Well, it's not so much just a physical interference. I mean, I think you may not have that situation in today's time where things of this nature are kept in electronic format. Well, they still have to get at it. They still have to get to it, to follow up on Judge Smith's question. I mean, that's what I'm trying to get to. I can't envision a circumstance where they wouldn't have to at least manipulate a computer. Right, but does that mean that there's a meaningful interference of a possessory interest? And we do not believe that there is such. Arguably a lot more interference in that case than planting a bug under somebody's car that they don't even know is there, you know, to draw that analogy to Jones, and that's what I'd like you to respond to. I think there's a big difference between planting a tracker device on a vehicle, which there is something there that actually follows it along, whereas with a hotel register, it can be simple as a regular, routine, regular register where someone just puts in their name and other information. Are you denying that that's a search? I guess that's what I'd like to start with. Is what has to be done under any circumstances in the police looking at the register, is that not a search? It doesn't rise to the level of a trespass because it does not. I said is it a search under the case law? There's really no question, is there? It's a viewing of the military registration records. Okay, let's assume for a minute that it is a search, just for purposes of our discussion. If it's a search, then you've got a real problem with Jones, don't you? We don't believe so because there isn't that meaningful interference with one's possessory interest. Well, I think you do have to look at Jones, whether we like it or not. It is the precedent, and it would seem that the Supreme Court's recent decision in Jones holds that a person needn't show a reasonable expectation of privacy where the government physically trespasses upon his or her, quote-unquote, person, house, papers, or effects. And so don't the police physically trespass upon the patel's papers or effects when they search their guest register? And so I'm wondering after Jones, before Jones, I think the reasonable expectation of privacy had some vitality. But after Jones, does that leave any room for considering the patel's expectations of privacy? Jones talks about a seizure of property occurs when there is a trespass, but when there is some meaningful interference with an individual's possessory interest in that property, likewise with a search. So we do not believe that there is any meaningful interference. Well, it's not like they're left out on the counter for anyone to look through. It's not like it's a guest book or something like that. I mean, if I went into a hotel, that information wouldn't just be out there that I could go look at. But this is a requirement that the plaintiffs do not object to, keeping the register. If Jones changed the landscape at all. I'm not sure I'm following, Your Honor. Well, before Jones, you know, you looked at whether you could say, you see, you're arguing they don't have a reasonable expectation of privacy in those documents because they're required to keep them and they know that. But it seems like Jones changes that, and that argument may not have the same vitality. I'm not saying I like it, but you've got to answer that question. I don't think Jones changes Katz, and that Katz, as we learned from Katz, ownership and possession are property concepts which cannot serve as a talismanic solution to every Fourth Amendment problem. So you're saying, to follow up on Judge Callahan's point and what Gerald has been talking about, I ask your opposing counsel whether, in order to show a facial constitutional issue, they had to satisfy both Jones and Katz. It sounds like you're saying that they do. Is that correct? In terms of papers, I'm not sure that the Court has indicated that they do or don't in both respect. But papers are different from people's homes, so I think there's more. But they're directly in the Fourth Amendment. Yeah, it's in the Fourth Amendment. Right. But a paper could be something like what we have, that there's no expectation of privacy in this. But isn't there a presumption of privacy in the papers? That's what Judge Berzon, I'm sure, was talking about. The Fourth Amendment specifically says, and I think I'm going to read you here, the basic rule is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment, except with only a few specially and well-defined exceptions. And when you're talking about papers, that is specifically mentioned in the Constitution. And you've got to have a very strong showing to show that you've gotten outside of that expectation. Where is that here? And when you answer this question, you've said it has to be significant intrusion. I don't know where you get that in light of Arizona v. Hicks, where simply moving a record player and looking at the serial number, you had to move it. Could you work that into your answer? Well, I think in that case, where they had to actually reach into the card and move the papers to view the VIN number, there's an intrusion into it. Hicks is where it was a turntable. They were arguing it as plain view, but they had to turn over the record player to see what the serial number was on it. Now, you're talking about New York v. Clasp, which is like the one that Judge Fischer is talking about. Very little movement, and yet there was a search involved. What's the difference? I think the difference is here we're talking about third-party information, that there's no privacy. But that's not the question. The question is how is anybody going to see these records without a physical intrusion? They're either going to – if the party – if the person behind the desk says, I'm not taking it out, what's he going to do? He's going to either seize some paper or he's going to seize the computer and use it against the person's will. And there is no other way to do it. You can't look at somebody's records without at least for some period of time taking some physical thing that the person is not choosing to give you. Actually, the police officers do not go and seize the computer or – They don't take it away, but they, for some – in some way, for some period, take – have to have control of it. How else are they looking at these things? They actually don't, Your Honor. What they actually do is they write up the individual for not complying with the LAMC, and that, in turn, it becomes a misdemeanor, and they go to court for violating not keeping the register. Oh, that's so much better. So there is a process in which – So this is the coercion that's used to say, show me the computer or I will write you up and you go to jail. And they say, okay, I don't really want to let you see my computer, but go ahead, take a look at it, because I don't want to go to jail. Why isn't that a trespass right there? Because it's not consented to access to the computer or the record or whatever. Well, it's not a trespass in the sense that these records are being kept, and there's no dispute or objection on the plaintiff's part with regards to keeping these. And their failure to show that they are keeping it I don't believe is coercion. They don't have to, and they have process in which if they believe that it becomes a Fourth Amendment issue, they can take it up at that point in time with a concrete set of facts. But, counsel, with respect, you've had questions from a number of us here that deal with things like the Hicks case and the Klass case where the police just barely turned something over so they could see a VIN number or they wanted to see something about a speaker. Hardly anything at all, certainly roughly equivalent to this, those were found to be trespasses and unconstitutional searches. What's the difference here? You have not answered that in my view. The difference is here in order to maintain these records, it doesn't have to be kept behind the counter or it doesn't have to be kept inside within a computer. It can be done with a regular register that is left open to the public. Well, but you don't leave those open to the public. Is there any evidence in this case to show that the Patels either leave their computer or some paper product out on the counter and invite people to come and inspect it? There's no evidence of that, is there? There's no evidence of that, Your Honor. They can't get your credit card information. They can't get your address. They can't get all sorts of things. That's not. It doesn't have the credit. People wouldn't stay there a lot if they knew that somebody could walk in the street and get all the information. It doesn't quite have all that sensitive information. It just says the method of payment. It doesn't quite have the credit card information. And the fact that this is third-party information that were occasionally. What if you don't even want someone to know you're there? They don't have to. Besides which, I mean, there's no evidence and there would be no real. You may think, well, they could leave it out, but they don't leave it out. In general, they don't leave it out. So if I decide that I'm not going to leave it out for all the reasons we're saying, then in order to get it, you still have to do some kind of a physical trespass or at least threaten one. How else do you get it? We don't believe that there is any meaningful interference with their possessory interest because we do not take it. Can I ask a different question? Are you arguing that the rule of Berger, I mean, would apply here, that you could justify this as if it were a Berger-like ordinance? We've briefed it that way, Your Honor. Well, I'm asking you what you're arguing now. If it's an administrative search, the ordinance is narrow enough. Is it an administrative search? Judge Fischer said it wasn't for the purposes of crime enforcement. Right. The judges that have reviewed this have not seen this as an administrative search. Is it a special needs search? I don't believe that it is a special needs search. Well, let me ask you this. Let's just assume that this is a hypothetical. Let's assume that Jones changed the landscape, and so now it doesn't leave any room for considering whether the Patel's expectation of privacy is an issue. So then it's not an administrative search. It's not a special needs search. We know there's not a warrant. So all that being said, can we still evaluate it for whether the search is reasonable? Yes, Your Honor. And what's your best authority for that? I don't have any specific case that I have in front of me, but the three judges, the majority decision below, I mean, the three of the three-judge panel did articulate the reasons for a trespass analysis, and there it's the intrusion's minimal. It's limited. There's no seizure that's inherent on the face of the ordinance. The ordinance is. . . I think in class you've got the situation where you're reaching into the interior of an automobile, which is different from. . . Well, okay, but here, like with Hicks, you've got they moved a defendant's stereo equipment to read the serial numbers on the back. That was held by the Supreme Court to be an unreasonable search because there was no probable cause. In class, he reached into the interior of the vehicle in order to move some papers so they could see the VIN number. That also constituted a search. Why is it not a search also to say, I want to look in your computer and check some information? Isn't that as intrusive as these others, and would it not constitute a search? And if it does, then under Jones, don't you have a problem? I think in the terms of if it's an electronic media that contains this information, it can be copied and given to the police officer. So there is no intrusion in terms of viewing the computer or using the computer or anything of that nature. You say it can be copied? You mean if the police officer says he can just give me a copy, what if they don't say that? What if they have the authority, apparently, under the ordinance to just go and look, right? But that's the need for a concrete set of facts, which we don't have here. Aren't we back to CBRON? I mean, it seems, listening to this whole exchange, I'm looking at 392 U.S., at 59 and 60, in which the court says, we decline, however, to be drawn into what we view as the abstract and unproductive exercise of laying the extraordinary elastic categories of Section 180A, which was the ordinance that actually laid out how you get warrants or conduct the searches, next to the categories of the Fourth Amendment in an effort to determine whether the two are in some sense compatible. The constitutional validity of a warrantless search is preeminently the sort of question which can only be decided in the concrete, factual context of the individual case. And the court went on to say, we can't determine the facial validity of this statute without doing an as-applied challenge, which is what the rest of CBRON addresses. So why shouldn't we just follow CBRON and stop this hypothetical debate and declare that we can't determine the constitutional validity based on a facial challenge alone? I don't disagree with Your Honor's analysis there. You would have us overlook Marshall v. Barlow, which is a more recent case where they did exactly that? What would we do with Marshall v. Barlow? You should tell or leave to the Supreme Court the prerogative of overturning its presence. I would defer to her. Well, but also, I don't know. You did what? You deferred to Judge Tallman? I would defer to Judge Tallman's comment there. Okay. All right. Is this really what the city wants? I mean, my understanding of the city's position of what it wants to do is exactly what the petitioners here claim they are doing and what they're challenging. So if we were to leave it alone and now we'd have a bunch of as-applied challenges, wouldn't they all come out the same way because, in fact, what you're doing is exactly what they say you're doing or want to do? Otherwise, you'd cut the whole statute. I'm not sure that an as-applied challenge would be the same as a facial challenge. Well, why not? If somebody walks in, if the police walk in and say, I want to see your register or I want to see your computer, and the person goes – I mean, maybe everybody will consent. I suppose you could hypothesize that. But if everybody – and that obviously isn't true because these people are complaining. So if they say, well, we're not going to consent, and then what? Then you're exactly where we are now. So I don't understand why it's even doing you any good. My understanding from my discussions with the Los Angeles Police Department is that they either find out that there's activity of this nature going on through sting operations or because of what they see. I don't know that they – Then they don't need the statute. Then they don't need the statute. They can get a warrant or they can – right? The ordinance that's being challenged is half of one sentence with regards to making it available to LAPD upon request. The rest of the statute has to do with keeping of this ordinance – I mean, keeping of the register and the requirement to do so and the information that's contained therewith. But you've agreed, as I understand it, that that means without a warrant and without consent. Correct, Your Honor. Okay. So if they – and if they have a probable cause, they can go and get a warrant. They don't need this provision. If Your Honor is saying they don't need half that sentence, I would be inclined to agree with the Court because – But that's the only thing that's being challenged here is that sentence. Right. And if there were a Fourth Amendment issue with a concrete set of facts, the plaintiffs could take that up and could challenge whatever that scenario would be. Counsel, could I ask you one more question? You referred a couple of times or you tried to – I'm not sure we let you get a word in edgewise, but you referred to these records a couple of times as third-party records. And what that means to me is that you're harkening back to some case law we have where, for example, a big customer gives information over to the bank and then doesn't have the ability to challenge the bank producing it. But why wouldn't I consider this registry to be more – from the motel owner's perspective, to be more akin to a customer list, where we said that's a very different type of document? In other words, I'm looking at the compiled record of the folks checking into the motel. Why is that not a customer list? I think in terms of a customer list, depending on the nature of the business and the nature of the customer list, I think if we have a detailed factual scenario as to what kind of customer list we're talking about, I think we can do a better analysis. Because if it's a customer list – let's say, for example, Starbucks takes down everyone's name for their drinks orders, and if someone writes that down, or if there's new technology that you do all that information at a kiosk, all that information's available as to the person who ordered what kind of drink, how much it cost, and things of that nature. There's no privacy interest there. With respect to if it's a customer list, let's say, an individual or a business. Whose privacy are you talking about? We're talking about the privacy of the customer. We're not here talking about the privacy of the customers. If Starbucks wants to make that information public, then of course it has to suffer the consequences – and I don't think they would – of losing customers. But we're not talking about Starbucks' privacy. If they want to keep it secret, they don't want to let access to that information. Why isn't that exactly the same problem as we have here? We don't have that same problem, because the information that's being conveyed – the cases I've already discussed – that isn't private information. It's not private with respect to the third parties. But why isn't it private with respect to Starbucks, who's keeping the records? And let's say, for example, they're accused of not paying enough sales tax. Right? And they say, well, look, we have records. We have records showing how many cups of coffee are sold. So the way we're going to prove up our tax liability is by providing this. Why isn't this protected information as to Starbucks? Well, Your Honor, that raises a good point also. Privacy protection, just as in Marshall v. Barlow, as in Dow? That raises a good point, Your Honor. The city also has an LAMC with regards to tax and how this information is to be made available to the city as well. So if – since the information is going to be revealed anyways, it becomes sort of an academic exercise on the plaintiffs, because it doesn't really give them any kind of substantive relief here. One part of the city can't – So it's revealed? I don't understand what you're saying. It's going to be revealed anyway because? There's another – as Chief Judge talked about, since it's for tax purposes, it's going to be revealed to another party. So since it's going to be revealed to the city just the same – Under what process would it be revealed? It's an ordinance that – A process, not law. What's the process? I'm not familiar with the process. Is it an administrative process so that they would have the right to object to it? And the police or the city inspectors just walk in and demand to see? The face of the ordinance just says they shall produce it. That's not quite the same situation, is it? They produce everything in it or they produce the bottom line, and then everything in it if they need to back it up. I mean, that's the way tax ordinances usually work. You produce the bottom line, and then if somebody challenges it, you have to prove it up. But it would be the same information here with respect to the gas. You mean just the bottom line is the same information, i.e., how much money they collected from everybody who walked in? Well, no, no. I think it would be the number of residents. I guess that would – Well, even the number of residents. But that's different from who and what their driver's license is and everything – their licenses and so on. We just record the license plate, which is visible to everyone in the public. We don't ask for the driver's license. Does the tax people need the license plate? I don't know with respect to that. One other question or maybe observation is do you think that hotels are not concerned about keeping this information private for their own business reasons, such that if, for example, somebody hacks into a hotel computer and starts taking the information about their customers, do you think the hotel couldn't get sued for a privacy violation, a contract violation, and or a California privacy violation? It's happened. What the third party knowingly gives away, the case has already said – Well, that's constitutionally. But in terms of whether there – whether the hotel has an interest in protecting these – this information from exposure because other than constitutionally they are subject to liability, that is, either on a contract basis or, for example, under California constitutional privacy protection, it's a different question, isn't it? The information that's contained in the ordinance isn't sensitive with respect – I don't think it rises to that level because it asks us for the name of the individual, the number of guests that are showing up, the method of payment. Why isn't that just like a customer list, counsel? I think it depends on the nature of the customer list because if I were a company that did my research and I have this special product that I am marketing and I've got a customer list that I know these individuals are interested in this product, I think it's a little bit different than any Joe public who walks in through the door and just says, hey, I need a room for the night or for the hour or whatever. That's how they do it. I mean, I'm not in the hotel business. Maybe having a list of customers that frequent cheap motels is a valuable asset. You can market to them. You can send them emails. You appeal to that segment of the market. I mean, I don't know what kind of establishment the motels have, but I assume it's not Hyatt or something like that. So why isn't knowing the people who – why wouldn't a competitor, for example, benefit from knowing who these customers are so the next time they're in town they will steal away the customers? There's no evidence in this case that such marketing techniques occur in this type of – What about Google? Doesn't Google have a concern if somebody hacks into Gmail and reads everybody's email, even though they have the email and even though the people who don't have any protection with regard to Google and may have a Miller problem, but still nobody really likes to deal with companies that are giving all their information out. But we're not giving all the information out. Some information they would rather not give out, such as I was in that hotel that night with somebody that my wife didn't know about. I was there when my parents thought I was somewhere else. The ordinance doesn't require that they give out their true names. It just requests a name, and it doesn't need to be authenticated. So the fact that the individual who doesn't want anyone to know that – Most people think that if they lie in a hotel register they might be committing a crime. I don't know. Anyway, you are out of time, unless there are other questions.  Thank you, Your Honor. I believe that our panel has three minutes left. If you wish to take it, if not, we'll make it even three minutes. I will, Your Honor, and I probably shouldn't open my mouth, but there is a case. The Supreme Court recently decided Florida v. Yardeen, and that case I think perhaps answers up Judge Tolman's objection under Sabron, but it was a case that followed up U.S. v. Jones. The police came with a trained police dog onto somebody's front porch to collect information, and the question of reasonableness came up with a reasonable, no expectation of privacy. The Supreme Court didn't even look at that, didn't analyze it under reasonable – That's a trespass onto the property. The problem you've got here is that the hotel lobby is open for any member of the public to walk into it, and if you assume for purposes of trying to decide whether there's any set of facts under which this ordinance could be valid, that this is an old-fashioned motel that keeps its guest book in the form of a register that's open on the counter for all to see, wouldn't that be a situation where the ordinance would be valid without violating any of these Supreme Court cases? The Supreme Court said that if there's a physical intrusion into the papers, it doesn't fall within the issue of whether it's open or not open, reasonable expectation of privacy or not. It's a constitutionally protected area because it's papers protected under the Constitution. If there's a physical – it said it very clearly. If it's a – they said that the individual came on with the trained police dog, had his feet on his property. That's all that was required. There's an intrusion in my hypothetical. The intrusion is as they are looking through or they are taking his papers, looking at the information. The mere act of eyeballing the open guest register is the intrusion? Is that what you're saying? The fact that they are allowed to inspect, they're given the authority to inspect, demand the inspection of the records, is the intrusion. Is there any evidence in this case that the records, whatever their form, were indeed open and available for the public? So these were papers, so far as the record shows, they were held in some fashion, on the counter, not on top of the counter. The ordinance says it has to be kept on commercial premises. You know, I am actually old enough to remember a hotel with registers, open registers. I was just wondering, are people allowed to just come in and look through them off the street?  Only in movies. I think what Gardein said was that it had to be, in the case of where they came on with the trained police dog, a common law license to consent. So the motel owner still has some right to exclude who can look at it and who can't. Just to end up with your point, then, as far as you're concerned, Sidgron is satisfied because under Jones and in the Florida case that you cited, we don't even have to get into the fact, intensive investigation, that cats and the special circumstances would require. This is, if it's a search, there's no evidence that consent is done. That's correct. And I would add that I think that's what Judge Megerson was saying when he was saying it was per se unreasonable. Thank you. Thank you, Your Honor. Case discarded. It was 10 submitted. We are adjourned.
judges: Kozinski, O'scannlain, Fisher, Berzon, Tallman, Clifton, Callahan, Smith, Murguia, Christen, Watford